**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-19

UNITED STATES TAX COURT

MERWIN K. SIGALE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18669-11S L.          Filed March 4, 2014.

Merwin K. Sigale, pro se.

<u>Derek P. Richman</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 in effect when the petition was filed.[1]  Pursuant to section 7463(b),

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended and in effect at all relevant times.  All monetary

(continued...)

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case is an appeal from a notice of determination in which the Internal Revenue Service Office of Appeals (Appeals Office) upheld a proposed levy action to collect petitioner's unpaid Federal income tax liabilities for 2006 and 2008. The sole issue for decision is whether respondent's determination to proceed with the proposed levy was an abuse of discretion. We hold that it was not.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Florida at the time the petition was filed.

## I. Petitioner's History of Tax Delinquency

Petitioner is a professor at Miami Dade College. Since 1998 he has routinely failed to pay the full amounts of tax reported as due on his Federal income tax returns. In December 2006 petitioner entered into an installment agreement with the Internal Revenue Service (IRS) in respect of his unpaid tax

---

[1](...continued)
amounts are rounded to the nearest dollar.

liabilities for 1999 to 2001, 2003, and 2004. The installment agreement was not made part of the record, and there is no indication whether petitioner actually made any payments pursuant to the agreement. In April 2009 petitioner learned that the IRS had previously terminated the installment agreement after concluding that he was in default. Petitioner maintains that the IRS failed to properly notify him that the installment agreement had been terminated and of his right to appeal the matter.

Between August 7, 2009, and September 13, 2013, petitioner made biweekly payments of $375 which the IRS credited to his account for 2002, 2003, and 2004. Petitioner testified that he did not direct the IRS to apply the payments for a particular taxable year. As of September 13, 2013, petitioner had fully paid his tax liabilities for 2002 and 2004, while he still owed $6,976 for 2003.[2]

II. Petitioner's Tax Return for 2006

On October 17, 2007, petitioner filed a tax return for 2006 reporting tax due of $24,908. He was credited with withholding tax of $18,388 and a refundable credit of $946, and he remitted $2,748 with the return, leaving a balance due of $2,826. On November 19, 2007, respondent assessed the tax reported on the

---

[2]As of September 13, 2013, petitioner also owed $4,256 and $8,756 for the taxable years 2005 and 2010, respectively.

return, an addition to tax for failure to timely pay the tax, and statutory interest. On the same date respondent sent to petitioner a notice of the balance due. On January 21, 2008, petitioner made a payment of $3,160 for 2006.

III. Petitioner's Tax Return for 2008

On October 21, 2008, petitioner filed a tax return for 2008 reporting tax due of $32,007. He was credited with withholding tax of $21,383, a refundable credit of $1,418, and an earlier payment of $2,000, leaving a balance due of $7,206. On November 30, 2009, respondent assessed the tax reported on the return, additions to tax for failure to timely pay the tax and failure to pay estimated tax, and statutory interest. On the same date, respondent sent to petitioner a notice of the balance due. On July 18, 2012, respondent applied an overpayment credit of $97 for the taxable year 2002 against petitioner's unpaid tax liability for 2008.

IV. Collection Activity for 2006 and 2008

On September 3, 2010, respondent sent to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2006 and 2008 pursuant to section 6330. The notice informed petitioner that he owed $76 for 2006 (comprising accrued interest of $48 and a late payment addition to tax of $28)[3] and

---

[3]The amount due for 2006 represents the sum of additional interest and a late payment addition to tax that accrued in respect of the unpaid tax liability of

(continued...)

$8,524 for 2008 (comprising tax due of $7,892, accrued interest of $272, and a late payment addition to tax of $360).  Petitioner's attorney, Steven Klitzner, responded to the notice by making a timely request for an administrative hearing with the Appeals Office, indicating that petitioner intended to propose a collection alternative in the form of an installment agreement and/or an offer-in-compromise.

Petitioner's case was assigned to Settlement Officer Sandra Rose (SO Rose) in Memphis, Tennessee.  On June 15, 2011, Mr. Klitzner submitted to SO Rose a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, along with supporting documentation and a cover letter requesting that the case be transferred to a local Appeals Office for a face-to-face hearing.  Petitioner reported in the Form 433-A that he did not have cash or other assets that could be liquidated to pay his outstanding tax liabilities.  On the other hand, he reported that his gross monthly income was $9,329 (comprising wages of $6,231 and Social Security/pension benefits of $3,098) and that his monthly living expenses totaled $5,827.  The Form 433-A included (1) an itemized schedule of petitioner's monthly living expenses which included entries of $1,494 for "Taxes

_____

[3](...continued)
$2,826 during the period November 19, 2007 (the date respondent first entered assessments for those items), to January 21, 2008 (the date petitioner paid $3,160 in satisfaction of the amounts assessed on November 19, 2007).

(Income and FICA)" and $870 for "Other Secured Debts" and (2) a supplemental

statement which indicated that the entry for "Other Secured Debts" includes "Irs

Obligation Levies" of $750.

Petitioner submitted an addendum to Form 433-A explaining that he had

recently paid approximately $20,000 to private nurses who were providing care for

Carol Miller, the 86-year-old mother of Florence Paisey, his "fiancee/domestic

partner". The addendum went on to explain that Ms. Miller had transferred some

of her funds to Ms. Paisey, who in turn had transferred the funds to petitioner.[4]

Finally, the addendum indicated that petitioner was paying $1,700 per month to

rent an apartment for Ms. Paisey in Tallahassee, Florida, while she pursued a

doctorate at Florida State University. Petitioner acknowledged at trial that he is

not married to Ms. Paisey.

SO Rose reviewed petitioner's financial statement and supporting

documents and determined that his gross monthly wages were $8,258 (as opposed

to the $6,231 reported in Form 433-A), increasing his gross monthly income to

$11,356.[5] After making some small adjustments that reduced his monthly

---

[4]Petitioner testified at trial that he frequently has difficultly making "ends meet" and has borrowed large sums of money from Ms. Miller.

[5]The record does not clearly reflect how SO Rose computed petitioner's

(continued...)

expenses to $5,585, SO Rose determined that petitioner had monthly disposable income of $5,771.[6] She further determined that he could make monthly installment payments of $1,500--an amount that would allow him to pay off his tax liabilities for 2006 and 2008 within three years and still remain in compliance with his current tax obligations.

Petitioner responded to SO Rose by insisting that he could pay no more than $800 per month. At Mr. Klitzner's request, SO Rose consulted with her manager who confirmed that petitioner was able to pay $1,500 per month. SO Rose's case activity notes state that after she informed Mr. Klitzner of her manager's decision, he told her that the Appeals Office should issue a final notice of determination. Petitioner asserted at trial that Mr. Klitzner's statement regarding the issuance of a notice of determination was merely a "rhetorical" comment and that he in fact

---

[5](...continued)
gross monthly income of $11,356. We do note that petitioner's biweekly gross wages of $3,235 from Miami Dade College would be the equivalent of $7,009 a month. In addition to monthly retirement benefits of $3,098 that petitioner reported on Form 433-A, it appears that SO Rose added monthly payments of $596 and $399 that he received from Cox Enterprises and Knight Ridder Newspapers, respectively.

[6]SO Rose increased the monthly expense for "Taxes (on income)" from $1,494 to $1,968 and eliminated the $750 monthly expense petitioner reported for "Irs Obligation Levies".

requested and expected to be granted a face-to-face hearing before the conclusion of the administrative proceeding.

On July 8, 2011, the Appeals Office issued to petitioner a Notice of Determination Concerning Collection Action(s) Under Sections 6320 and/or 6330 sustaining the proposed levy action. Petitioner filed a timely petition for review with the Court. The petition includes allegations that the proposed levy would cause petitioner financial hardship, that the Appeals Office had improperly denied him a face-to-face hearing, and that, although the IRS unilaterally terminated a "previous payment agreement", he continued to voluntarily pay $750 per month.

## Discussion

Section 6331(a) authorizes the Commissioner to levy upon property and rights to property of a taxpayer who is liable for taxes and who fails to pay those taxes within 10 days after notice and demand for payment is made. Section 6330(a) provides that the levy authorized in section 6331(a) may be made only if the Secretary has notified such person in writing of the right to an administrative hearing before the levy is enforced. Upon timely request, the person is entitled to an administrative hearing before the Appeals Office. Sec. 6330(b)(1).

In rendering an administrative determination in a collection review proceeding under section 6330, the Appeals Office must verify that the

requirements of any applicable law and administrative procedure have been met in processing the taxpayer's case. Sec. 6330(c)(1), (3)(A). The Appeals Office also must consider any issues raised by the taxpayer relating to the collection action, including offers of collection alternatives (such as an installment agreement), appropriate spousal defenses, and challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A), (3)(B). A taxpayer may challenge the existence or amount of his or her underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an earlier opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Finally, the Appeals Office must consider whether the collection action balances the need for efficient collection against the taxpayer's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C).

Section 6330(d)(1) grants this Court jurisdiction to review the administrative determination made by the Appeals Office. If the taxpayer's underlying tax liability is properly in dispute, the Court will review the determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, as is the case here, we review the determination for abuse of discretion. Id. at 182; see also Sego v. Commissioner,

114 T.C. 604, 610 (2000). An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

I. Validity of the Final Notice of Intent To Levy

Petitioner contends that respondent failed to properly notify him that the installment agreement he entered into in 2006 had been terminated. Citing Internal Revenue Manual (IRM) pt. 5.14.1.5 (Sept. 26, 2008), petitioner argues that so long as he was denied notice and the opportunity to appeal the termination of the installment agreement, the IRS was barred from proceeding with any levy action for the years in issue and the notice of intent to levy dated September 3, 2010, is invalid. We disagree.

The record shows that petitioner entered into an installment agreement with the IRS during 2006 in respect of his unpaid tax liabilities for 1999 to 2001, 2003, and 2004 and that the IRS terminated the agreement sometime before June 2009. Assuming for the sake of argument that petitioner was not properly notified that the installment agreement had been terminated,[7] the provisions of IRM pt. 5.14.1.5(1)(e) generally would have barred the IRS from proceeding with a levy

_____

[7]We make no finding whether petitioner was properly notified that the installment agreement had been terminated.

action in respect of petitioner's account for the years 1999 to 2001, 2003, and 2004 while an appeal of the termination of the installment agreement was pending or unresolved. Be that as it may, the provisions of IRM pt. 5.14.1.5(2)(c) (and the example that follows it) make it very clear that the IRS was free to serve notice of a proposed levy for petitioner's balance due years not included in the disputed installment agreement (e.g., 2006 and 2008). Accordingly, we reject petitioner's argument that the notice of intent to levy dated September 3, 2010, is invalid.

## II. Whether the IRS Properly Applied Petitioner's Payments

As petitioner sees it, after the IRS demanded that he pay the balances due for 2006 and 2008, all of the payments that he submitted should have been applied against his unpaid tax liabilities for those years and no others. Consistent with this theory, petitioner contends that he has fully paid his tax liabilities for 2006 and 2008 through the biweekly payments that he made between 2009 and 2013.

The record reflects that from August 7, 2009, to September 13, 2013, petitioner made biweekly payments of $375 which the IRS credited to his account for 2002, 2003, and 2004. Petitioner testified at trial that he did not direct the IRS to apply the payments to his account for 2006 and 2008. It is well established that in the absence of direction by the taxpayer, the IRS can apply a payment against any outstanding tax liability of the taxpayer. See, e.g., Wood v. United States, 808

F.2d 411, 416 (5th Cir. 1987). On this record, we conclude that respondent properly credited the payments to petitioner's account for 2002, 2003, and 2004.

Petitioner also contends that respondent's records reflect that he has paid all amounts due for 2006. We disagree. Although the record includes a Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which shows that petitioner's balance for 2006 is zero, a closer review of that transcript of account, alongside other transcripts in the record, shows that petitioner owes additional interest and a failure to pay addition to tax attributable to accruals from November 19, 2007, the date respondent first entered assessments for those items, to January 21, 2008, the date petitioner paid $3,160 in satisfaction of the amounts assessed on November 19, 2007.

III. Whether the Appeals Office Abused Its Discretion

Petitioner maintains that the Appeals Office abused its discretion in rejecting his proposal to make monthly installment payments of $800. Specifically, petitioner complains that the Appeals Office failed to (1) afford him a face-to-face hearing and (2) properly consider whether the proposed levy would cause an economic hardship.

Section 6159 authorizes the Commissioner to enter into a written agreement allowing a taxpayer to pay a liability in installments if the "agreement will

facilitate full or partial collection of such liability." The decision to accept or reject installment agreements lies within the discretion of the Commissioner. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013) (citing Kuretski v. Commissioner, T.C. Memo. 2012-262, at *9 and section 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.).

A. Face-to-Face Hearing

We note at the outset that SO Rose's case activity notes state that Mr. Klitzner consented to the issuance of the notice of determination without a face-to-face hearing. Mr. Klitzner did not appear as a witness at trial to testify as to his conversations with SO Rose, and we are not inclined to accept petitioner's secondhand account of what transpired. But even if Mr. Klitzner demanded a face-to-face meeting, as petitioner asserts, we conclude that the Appeals Office did not abuse its discretion in proceeding without one. In short, petitioner's gross monthly income was at least $10,107 (comprising wages of $7,009 and Social Security/pension benefits of $3,098). Giving petitioner the benefit of the doubt and assuming that his monthly living expenses totaled $5,827 (as he reported on Form 433-A), he was left with $4,280 of disposable income each month. That being the case, SO Rose's determination that petitioner could make monthly installment payments of $1,500 without suffering economic hardship was

completely reasonable, and we see no reason to question her decision to issue a

final determination without holding a face-to-face hearing.[8]

B.  Additional Expenditures

Petitioner contends that SO Rose abused her discretion by failing to take

into account monthly expenditures that he made for the benefit of Ms. Paisey, his

domestic partner, and Ms. Miller, her mother.

The Commissioner has issued financial analysis guidelines for settlement

officers to follow in determining the terms of an installment agreement.  See IRM,

Financial Analysis Handbook, 2 Administration, pt. 5.15 (Oct. 2, 2009).  In

evaluating a taxpayer's ability to pay tax, the Commissioner classifies a taxpayer's

expenses into necessary expenses and conditional expenses.  Pixley v.

Commissioner, 123 T.C. 269, 272 (2004).  "The total necessary expenses establish

the minimum a taxpayer and family needs to live."  IRM pt. 5.15.1.7(1) (Oct. 2,

2009).  "Conditional" expenses are those expenses that do not meet the necessary

expense test but which may be allowable if the tax liability, including projected

accruals, can be fully paid within five years.  Schulman v. Commissioner, T.C.

Memo. 2002-129; IRM pt. 5.15.1.7(7).  The guidelines state that generally, when

---

[8]This Court and other courts have held that a face-to-face hearing is not required under sec. 6330 in all circumstances.  See, e.g., Jackson v. Commissioner, T.C. Memo. 2010-180.

the Commissioner is determining the ability to pay, a taxpayer is allowed only expenses which he or she is required to pay, and discretionary expenses attributable to a nonliable person are not taken into account. IRM pt. 5.15.1.4(1), (3)(G) (Oct. 2, 2009).

We see no need to delve into the potentially murky question whether the expenditures that petitioner made on behalf of Ms. Paisley and Ms. Miller constitute necessary or conditional expenses as those terms are used in the IRM provisions cited above. Assuming for the sake of argument that they qualify as one or the other, we nevertheless conclude that the Appeals Office did not abuse its discretion in this case. As previously discussed, petitioner had a substantial amount of disposable income. We are convinced on this record that he had ample financial resources to make monthly installment payments of $1,500, pay his own reasonable living expenses, and have enough funds left over to provide significant assistance to Ms. Paisley and her mother.

IV. Conclusion

Consistent with the preceding discussion, we hold that the Appeals Office determination to proceed with the proposed levy action was not an abuse of discretion, and the proposed levy is sustained.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.
